Mr. Berardi, appellant Daniel O'Day. Mr. O'Day, you may proceed. May it please the court, counsel. I was the trial attorney in this case, as well as Mr. Berardi's attorney on appeal. And he was convicted after a jury trial. The facts essentially were that he was an alderman or a council member in Canton, Illinois. There was an election coming up the next Tuesday. The budget was supposed to be available for the public to see. There was a deficit in the budget. The mayor instructed people at City Hall not to hand out the budget on time. And when Mr. Berardi came to City Hall to raise questions about that, somebody called in the chief of police to tell him to get out of an area of City Hall where he was calling people in and having news media arrive to show that these budgets were sitting there in a box on the other side of a piece of glass in an office. A lot of other people came in and out. It's shown on the videotape in this case that's in evidence and available on appeal. What was the area? The record's unclear. Not all of us have the record, but what was the area that the defendant was in? If you can picture this, there was a couple of offices with doors. He wasn't in either of those. Then there was also sort of an office to get to that office where there was a part-time person who had her desk there. She was not there that day. And so you had to walk through this sort of part-time person's office or hallway in order to get to these public officials' offices where the budgets could plainly be seen through the glass, and that shows on the videotape as well. Was it a public area? Is it a lobby? We contended that it was a public area, that the public was frequently allowed to go in and out of there. In fact, the person, the part-time person who had the desk in that area, testified that people went in and out of there frequently. But I think if you're looking at the facts and the like, most favorable to the prosecution in this case, there was some evidence, too, that the public was not allowed in those two offices, certainly, at all times. But I don't think there was a lot of evidence about the public being disallowed from this particular area that led to those two offices. In any event, after some time that's on the tape of my client having the news media come in and talking to different aldermen who came in and other people in and out of this area, eventually the chief of police left for five minutes and then he came back and said, you have to leave this area. We contend that that was, what happened next was not resisting arrest. In light of your McCoy decision, we asked for a jury instruction on this, on the line between First Amendment activity and arguing with police and what actually constitutes resisting. But even though in the Falls case the court noted that the standard IPI instruction doesn't cover this kind of a situation, where a judge refused to answer a jury's questions about, well, does it have to be physical or not. And even though in the McCoy case a prosecutor misled the jury about whether or not resisting had to be physical, even though all of those things had happened in the case law, our request for this jury instruction was denied. And so the jury never had the benefit of any discussion about how you do have the ability to argue with police, at least to some extent. Nor was the jury ever instructed that the resistance had to be physical. We believe that Justice Carter's decision, or his opinion in McCoy, there were three decisions or opinions in that case, but the part that he wrote accurately stated the law. And two of you went along with that in the McCoy case on this panel that accurately stated the law in our reading of McCoy. And so I don't presume to tell you what you meant in McCoy, but from our reading of it, all we did was quote it and eliminate case citations in our proposed jury instruction, but the trial court refused to give that instruction. So we think an accurate statement of the law was required. In Falls, the standard IPI instruction was recognized as not covering this kind of a situation. In McCoy, it was recognized that until the Illinois Supreme Court makes some decisions in this area, it's a very confusing area of the law for lawyers and judges, and you can imagine what it's like for jurors. Because of the lack of that instruction, we'd like to take this case back to the trial level and have that instruction given and try it to a jury that knew that you can argue with police that that is not resisting. What do we have factually here? It's unclear, it seems to me. I mean, do we have an argument with the police or do we have just a refusal to remove one's self upon request of a policeman? I think we have an argument with the police and that that argument even goes on for half an hour to 40 minutes on that tape. We're actually sort of lucky. Is that part of the record? Yes. Here's what happened about it. Fulton County, we did have some trouble getting the whole record here, but eventually we did get the DVD here, and we filed a motion to add that to the record, and then that motion, I believe, was granted, and then I believe that then the circuit clerk of Fulton County did forward that DVD. I'm not aware of that. I apologize for it because I probably should have made sure from the beginning that the circuit clerk forwarded that, and I didn't, but eventually the error was caught, and we did ask them, this court, for permission to supplement the record, and then she did send the DVD. We're sort of lucky in this case in that sense, I think, though, that there is this DVD that documents the events in question as they occur, and especially the events that immediately precede the arrest for resisting a peace officer because there can be no factual dispute then about what happened in the moments leading up to that arrest, and I think it's important, too, that this case involved a charge of resisting, not obstructing. In the case law in Illinois, beginning with the Raby case, the Supreme Court of Illinois recognized a distinction between obstructing and resisting and said, you know, obstructing might mean to stand in the way of, but resisting requires an actual physical act. In the Lauer case, the appellate court explains that obstructing is a broader concept than resisting and that while obstructing might involve something that's not physical, resisting does require something physical. And so in light of all of these cases, which a lot of them are discussed in the McCoy decision and Justice Carter's part of the decision, we believe that there's been too much of what I would like to call sort of a rightward ratchet now on the resisting statute in the law where now we've reached the point where prosecutors are trying to convict people of resisting when there was no touching whatsoever. The officer never touched the defendant and the defendant never touched the officer in this situation. And when the officer asked him to leave this area and to stop talking about the budget, he did not leave right away, but at the same time, the officer never tried to touch his elbow and lead him out or anything or any of the other factors that you see in the resisting cases where there was some kind of a physical resistance either by going limp or by actually trying to, you know, slug a cop or whatever. None of that happens here because there's no touching either way. And in fact, when the officer says, well, let's go, my client goes and leaves the room after he's placed under arrest without the officer even touching him at that point. Mr. O'Day, I have a few questions, factual questions as well. Your client at the time that this occurred was an alderman. And by ordinance, the budget was to be available prior to or at the time that he presented himself to pick it up? Yes, and not only that, the city clerk had put an article or an ad in the newspaper saying that it would be available at a particular point in time, and then it wasn't. So my client started getting phone calls from constituents and others saying, well, why isn't the budget available at City Hall? So he went down there then with his wife having the video camera and started filming his questioning of people, well, why isn't the budget available? And in fact, it was available because you could see the budget sitting there on the other side of this glass in these boxes. So the basis of the call to the chief of police is to stop him from being in a private area or to stop him from continuing to seek what appears to me to be a legal act on his part? Well, somebody didn't like him asking all these questions, and in fact, I mean, the city officials start peeling away in the process, the ones who are in charge of the budget, like the budget director and the treasurer, they end up leaving those rooms then and locking them, the rooms that are right adjacent to this hallway or this part-timer's office. And everybody starts, nobody wants to answer the questions about why isn't the budget available. Well, eventually people start saying, well, the mayor told us not to give it out, and that's why it wasn't available. Okay, so what we have is a series of questioning going on. You're telling me that this tape will show that there's a hallway within which the defendant is positioned. Am I correct? Yes, or an ante room or I don't know what you would call it. They probably stuck a desk in there for this part-timer who used to be a full-timer with the city. Okay, but this is a public building, am I correct? Yeah, exactly. During business hours, am I correct? Exactly. Okay. And this is an area that's normally open to the public. Exactly, exactly. And then, so in this kind of a situation, this is hardly the kind of situation where you want to allow a rightward ratchet of the law here for the resisting statute to say that this is resisting a peace officer to at least to demonstrate some disagreement with the police officer about whether you should have to leave this area or not. It's not a situation where anybody's like sitting down in the middle of the intersection of Randolph and LaSalle in Chicago, which was what happened in one of the cases that are cited in our argument. Would you be here if the charge was obstruction instead of resistance under these facts? I'm not sure. If they had, their pleading requirements would have been stronger if they had alleged obstruction. That is the lower case, I think, that their pleading requirements are greater to allege more facts in the information if they're alleging obstruction. But let's say that they had alleged obstructing a peace officer by remaining in the area or something despite him. Are you saying that your client's defendant's actions is passive refusal? They couldn't be more passive. Passive refusal to leave would be a characterization. Well, standing there where he was previously standing. Well, he was requested to remove himself. Yes, he was. I mean, if we take a look at this, we'll see that. Yes. And he did not. That's correct. Okay. It's certainly part of the defendant's argument that he was authorized to be there. Is it also part of your argument? Yes, I think that that all has to be taken into account on the issue of resisting. That if you're blocking an intersection at the corner of LaSalle and Randolph or something, that there may be less of an opportunity to discuss matters with the police before you have to go. Or else if they're guiding you by the hand, at least, that you couldn't resist that. Now you're talking about physical contact. I think under McCoy. When you said that. But your hypothetical would be charged as obstruction, could it not? Possibly. But I think there would have to be a lot of facts alleged in the information. And then that information would have to be tested under all these cases. And, you know, why I'm having so much trouble answering your question is, like, you take cases like Sinott. Sinott. You have two minutes. I'm sorry. You have two minutes. That's fine. You take a case like Sinott. Sinott is a case where obstruction was charged. And that's different from our case. But then, nonetheless, Sinott's been cited a few times since it was decided. And, you know, the courts don't always make a differentiation between where obstruction is charged and where resisting is charged. Isn't that kind of a problem when the legislature's kind of bad writing on the criminal charges where they're saying resistance or obstruction, obstruction or resistance? They seem to not know what the difference is. Well, it's horrible. And that's why I went back to the United States Supreme Court in my brief and showed how this resisting language was then interpreted at first by the Illinois courts based on what the United States Supreme Court had held language meant in the District of Columbia. But in my opponent's brief, then, they said that was all irrelevant. But I think it is relevant to go back in the legislative history and see, well, before all this rightward ratchet happened, what did the terms really mean back at the time that the statute was passed? And they did require physical acts. In the D.C. case, a lady, inspectors came to her house and she refused to open her door for the inspectors. And then she was charged with resisting peace officers when she wouldn't open her own door. And you can, if you don't go back and look at all that, then you can get this rightward ratchet where now we're in a case. What's a rightward ratchet? Well, it's sort of like Justice Rehnquist used to talk about the leftward ratchet of the law. But every time that they recognized a new constitutional right, that that then would lead to more rights, and it was sort of a leftward ratchet. So I'm sorry I borrowed from him, and now I've called this a rightward ratchet. But it is. It keeps going further and further and further. And you were right in McCoy when you said that there's all these opinions out there and it's hard to make any sense out of them. But you can pick and choose if you're a prosecutor to the point where now we have a case where there's no touching at all. And it's quite different than all the other cases where there's nothing going on. And then you have a case like Sinott where the appellate court says, well, we're going to use a policy analysis to determine what the legislature meant. And we think that rather than having a billy club used, it's better for a defendant to just comply with whatever the police say. Well, we think that presents sort of a false dilemma that there are not just two choices that an officer can, like it was demonstrated in all these cases, guide somebody out of a place or they don't have to take a billy club out. Thank you. Thank you, counsel. Ms. DeMichel, you may respond. May it please the court, counsel. My name is Laura DeMichel. I'm here on behalf of the people in this case. I've been at the appellate prosecutor's office for about six months now, and this is my first chance to address the court. Welcome. I hope it won't be your last. I hope so, too. Defendant resisted a peace officer when he persistently refused many authorized police requests to leave a private office area and his conviction for resisting. What was his lawful authority being there? What was? Lawful authority. One of the elements is you have to have that police officer exercising his lawful authority. What is that? The authorized act of the peace officer. Officer Taylor and Officers Eveland were securing the private office area. The area, the people contend, was private, although it was frequently open to the public at the time in which defendant was physically remaining there and refusing to go. All the employees had left. The offices were all locked. There was no one left there that he could have possibly been talking to. So the police officers would have been requested to, as the video demonstrates, just stay there and babysit him if he refused to leave. What time of day was this? This was 3.30 on Friday. They quit at 3.30? So normally employees would be there, but in this case they felt they, Diana Tucker left because she felt she wanted, she felt harassed and she wanted to avoid a disturbance, and also the budget director, Fabrita, had left, escorted by a police officer, because he felt the need to avoid a disturbance. So at the time in which defendant. In other words, the defendant was arguably not in anybody's office. Am I correct? He was. There's a central office area, which included the office of the pension director. That area was behind an area controlled by a key fob, and when the employees had left the office for lunch, they'd block that area, or when they went home for the day, the area behind, the area controlled by the key fob, would all be locked, and so behind there was the vault and two offices and the pension director's desk. But that area is not open to the public, and the employees aren't there. Defendant was instead instructed he could wait right outside the area that was controlled by the key fob. He was permitted to wait in that public hallway outside the key fob controlled area. He just couldn't remain in the private area after all the employees had left. And the officers indicated they needed to secure that area also because Fabarita had indicated to them that he didn't know whether defendant would break the window to his office or cause some kind of disturbance that way. But did you at all times just consider Mr. Berardi to be a member of the public? I mean, he's an elected official responsible for making sure that the ordinances are upheld and followed. I mean, you didn't take that into consideration when, first of all, he's being charged or that he's unauthorized to be in a building where employees should be at 3.30 in the afternoon? It's true that he's an alderman and an elected official, but nobody was going to have the authority to be in that area when no employees were around. He wasn't arrested for asking for a copy of the budget. It didn't matter what he was there to do after the police officers needed to secure the area. And who has the authority to tell the police officers that they are to secure an area in a public building? Well, in the police officer ordinance, I believe the record showed that they had control over that area of the building. And they are authorized to prevent disturbances, and they felt the need to secure this area in order to prevent a disturbance. Well, I have a question. You charged resistance, didn't you? Yes. It seems to me you're arguing obstruction. Well, it's true that resistance does require a physical act under Ravy as opposed to mere argument. But as the court noted in McCoy, refusal to comply with an officer's commands may rise to the level of resisting, specifically resisting not obstructing, if a person persists in refusing to comply. And what case stands for that? That was in McCoy. And in Ravy, the main distinction was between mere argument and a physical act, which hinders, interrupts, prevents, or delays the performance of an officer's duties. However, a refusal to leave may be a physical act for the purposes of Ravy. No touching is required. That passive act may be a physical act for the purposes of Ravy is demonstrated in Ravy in that court. In that case, the court affirmed the trial judges having given the jury an instruction, which stated that resisting may be passive as well as active, and also that interference does not require active resistance in force. Additionally, although Ravy speaks in terms of the defendant resisting arrest, he was actually charged with the same crime as the defendant in this case. He was charged under Chapter 38, Section 31-1, which is now 720 ILCS 5-31-1. Do you find that statute kind of confusing? Yes, the statute is kind of confusing. Is it a statute that doesn't really put the public on notice of what offenses they could be charged for? Well, as the Ravy court held that the statute is sufficient to put defendants on notice of what they will be charged for, they need a knowing... What district was that, I don't know. Ravy was the Supreme Court. Supreme Court. Illinois Supreme Court. And so they said that. Yeah. If there's clear enough notice. Yes, Your Honor, the constitutionality of the statute was challenged in Ravy and they upheld that statute. The defendants need a knowing act of resistance and the act must hinder, interrupt, prevent, or delay the performance of an offensive activity. So merely saying, I'm not leaving, I'm not leaving, wouldn't be enough. If he had actually been walking away while he had said that, it was important that he stood there combined with repeatedly announcing his intentions to stay there. He said three or four times, you're going to have to arrest me, you're going to have to arrest me. It was clear he wasn't going anywhere unless he was arrested for resisting. It seems like, doesn't that make you have competing duties here? He didn't just say, I'm not leaving, I'm not leaving. He said, I have a right to be here. The budget is supposed to be distributed. So he was asserting his duty as an alderman against the police officer who was asserting a contrary duty. How is that resisting? He wasn't charged for asking for the budget and the police officers weren't trying to get him out in there because he wanted the budget. Why were they trying to get him out? They were trying to get him out in there to secure the area after all the employees had gone home and he no longer had a right to be there because it was no longer open to the public. They went home? They left the area. I'm not sure where they went, but the record reveals that they left in order to avoid a disturbance happening. So the police officer was exercising. In order to avoid giving up the budget. I don't know why those individuals went home, but the actions that are important here are the actions of the police officer. There was nothing the police officer could have done to get the budget for a defendant. So a defendant fighting with the police officer couldn't have gone anywhere to get him the budget. As the police officer said on the videotape, I can't just beat him up and get the budget. I have a question. Okay, so the employees take and run out of the ship, right? Okay, they leave the building. They secure everything as they leave? They had locked their office doors behind them, yes, and then they would have expected that the area controlled by the key fob would also be closed off. That was the normal protocol when no one was in the office. But the front door to the building was still open? And the police officers never told him that he couldn't be in the building. They let him wait right outside the offices in the public hallway. In fact, initially when at an earlier point in the encounter, shortly after the defendant first arrived in the building. The officers told him just wait outside in the public hallway and he did so and that was fine. There was no problem there because he was in the public area. And the police officers were doing their duty of investigating what was happening. So he was allowed to be in the building, just not where no employees were left. And nothing could be done to get him the budget once no employees were there. And the officers needed to be able to secure the area and move on to their other duties. He clearly hindered, interrupted, and delayed the performance of the duties in securing that area when he refused to leave ten times. The area sounds like it was all secure. They couldn't leave him there. Why? They didn't know what he would do. The officers testified that they didn't know what he would do. He could have gone through the pension ladies desk. They wouldn't allow anyone to remain in that area when there was no one there. The budget director testified that he thought that maybe defendant would break in the window to his office in order to root around. Isn't that just speculation? I mean, anybody, there's a possibility that anybody could do something. Right. There's a possibility that anyone could do something, which is why the area was private and closed off when the employees weren't there. Because they wouldn't want anyone in there. But they were supposed to be there. I guess I don't understand the circular argument. It's a work day, and they should be there. And the budget by ordinance was supposed to be delivered to the public by that day, if not before. Whether or not they should have been there, they weren't there, and when they weren't there, the officer needed to secure the area. Additionally, the policy of not meeting and touching slugging of officers shouldn't be encouraged. And if an individual can't be removed unless he lashes out against an officer, that would remove the cases in which an individual would comply. You have obstruction, don't you, that an officer can charge? They could have charged obstruction, true, because obstruction is even broader. That's Senate court, and they're kind of, you know, that's a second-fifth case, first of all. In that case, they did charge obstructing, but the issue being argued over there was whether there was a physical act, and important to the purposes of this case. The court found that defendant's refusal to exit a vehicle after four police orders to do so was a violation, so they found there was a physical act in that case. So if that's a physical act for the purposes of raving, which requires the act which hinders or delays the performance of an officer's duties, then refusing to leave many police requests is good. Does obstruction require a physical act to be charged with and convicted of obstruction? I believe raving refers to the physical act in terms of both resistance and obstruction. So I believe the physical act is required for both. In this case, he definitely could have been charged with resisting. Resisting is narrower, so the point of Lauer is that what is meant for the pleading requirements is different, but in this case, the sufficiency of the pleading hasn't been challenged, so Lauer is less applicable, and what's important is that defendant's conduct did meet the requirements of the resisting statute. But Lauer isn't bonding on us. McCoy is bonding on us. Yes, McCoy is bonding on us, and McCoy states that persistent refusal to comply may rise to the level of resisting if that transcends the bounds of mere argument and goes into the persistent refusal to comply category. So under McCoy, defendant's actions of persistently refusing, making it very, very clear that he wasn't going anywhere unless he was arrested, under McCoy is a physical act of resistance. And then when the police officer told him that he was going to arrest him, he went with him without any problem? Yes, he didn't resist his arrest, but at the time at which he was arrested, he had already committed the crime of resisting a police officer. That crime was completed when he persisted in refusing to comply with the requests to leave. He said he'd have to be arrested, and then the officer indicated that he was under arrest. Counsel has two minutes. Also, Chief Taylor's acts were authorized and were not violations of defendant's free speech rights. Defendant was not arrested for requesting a budget. Strandberg and Anderson asked for copies of the budget. They were not arrested for asking for copies of the budget. If that was the issue here, they would have also been arrested. Also, the officer stood by right next to defendant when he was in the public hallway while defendant had numerous conversations with city officials and also with the television media and the print media about the availability of the budget. They did not in any way try to stop him from asking those questions. They only tried to secure the office area after. There was nothing they could do to answer those questions because they were just doing their jobs, and defendant was never told he had to leave completely. He could have waited in that public hallway as long as he wanted to. With regards to the jury instruction issue, Supreme Court Rule 451 states that if IPI criminal contains an accurate instruction, that is the instruction that must be given, and so the instruction number one was properly refused. Why don't we have two IPI instructions, one for resisting and one for obstruction? I think it's the same. I believe it's actually the same instruction. You just cross out resisting or obstructing, if I'm recalling correctly, for leaving it. Because sometimes they're charged with resisting or obstructing, and then they leave and vote. And the two instructions, one's just more specific than the other. You put in the specific officer's name and the requirements that they knew that that person was an officer and such. So the people contend that the evidence is more than sufficient to allow the jury to find all elements of the crime beyond a reasonable doubt, and so defendant's conviction and sentencing should be affirmed. No further questions. Thank you. Thank you. Mr. O'Day, you may reply. This distinction between obstructing and resisting is important in the case law. In fact, in the Synop case, the court distinguished the Stout case in which obstruction was alleged from the decision in Cope where resisting was alleged. In Cope, somebody refused to open a door for police at a restaurant when there was a runaway child inside. And in Cope, that was held to not be resisting. And the Synop case distinguished that and said, well, because in Synop we have obstructing charged, it's more like Stout, which is where obstruction was charged. And so you do have this distinction that does need to be drawn. In our case, resisting was what was charged. There was no effort to secure that area where that part-time pension clerk had her desk when these public officials skedaddled because they didn't want to answer the questions about the budget, even though one had the box of budgets sitting right there on the floor. They didn't close the door and lock it so that the public couldn't be allowed to be in this little room, this anti-room or hallway or whatever you want to call it. In the Raby case, which was where the Illinois Supreme Court upheld the resisting and obstructing statute against the challenge of facial invalidity, the court didn't say that where you have a proper individual situation, like we do in this case, that you shouldn't give a jury instruction so that the jury won't be informed about what the law is about arguing being different from resisting. And, again, we would like the opportunity to go back with that kind of a jury instruction taken right out of the McCoy case and retry this case or have the court enter judgment for my client because there wasn't any evidence of touching here and so there was no act of physical resistance, whether you want to call it passive or whatever. In Roby, Roby is the case that I've been talking about in the middle of an intersection in Chicago. It was at the corner of LaSalle and Randolph in Chicago. And the court did talk about passive resistance in that case, about how when they tried to move the people out of the intersection they went limp and that that kind of physical act could constitute resistance. But I don't think that there's ever been a case that has approved a resistance conviction where there was no touching at all. And I haven't been able to find one. And so we would ask you not to allow this rightward ratchet of the law or even if you do say there was enough evidence to convict in this case, we'd like the opportunity to go back and have a jury that's properly instructed because the IPI instruction is recognized in Falls and in McCoy doesn't always cover the situation where you've got an argument involved. Thank you. Thank you, counsel, for your arguments in this matter this morning. The matter will be taken under advisement and a written disposition shall issue. The court will stand in brief recess for a minute.